IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MONA SANDS,                                      Civ. No. 3:14-cv-01637-TC

      Plaintiff,                          FINDINGS AND RECOMMENDATION

    v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

      Defendant.

_____

Merrill Schneider
Schneider Kerr & Gibney
P.O. Box 14490
Portland, OR 97293
    Attorney for plaintiff

Billy J. Williams
Acting United States Attorney
District of Oregon
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97201-2902

Lisa Goldoftas
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
    Attorneys for defendant

1 - FINDINGS AND RECOMMENDATION

COFFIN, Magistrate Judge:

Plaintiff brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. §§ 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner).    The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) under the Act.    The Commissioner's decision should be affirmed and the case dismissed.

## PROCEDURAL BACKGROUND

On November 3, 2010, plaintiff applied for DIB, alleging disability beginning November 22, 2008.    Tr. 17.    Her application was denied initially and upon reconsideration.    Tr. 17.    On February 22, 2013, a hearing was held before an Administrative Law Judge (ALJ), wherein plaintiff appeared with an attorney and testified.    Tr. 28-60. A vocational expert (VE) also appeared by telephone and testified. Tr. 56-59.    On March 13, 2013, the ALJ issued a decision finding plaintiff not disabled from November 22, 2008, through December 31, 2012, the date last insured.    Tr. 17-27.    On August 12, 2014, the Appeals Council denied review, rendering the ALJ's decision final. Tr. 1-3.    Plaintiff now seeks judicial review.

Plaintiff was fifty-four years old at the time of the ALJ's decision and has a G.E.D.    Tr. 140, 168.    She had worked as a proof machine operator in a bank for 27 years and as a lead proof machine operator supervisor for about one and a half years.    Tr. 56-57. Plaintiff alleges disability as of November 22, 2008, due to various physical and mental ailments, including obesity, diabetes, fibromyalgia, chronic pain, panic attacks, and depression.    Tr. 61.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . .

to last for a continuous period of not less than 12 months . . . ."
42 U.S.C. § 423(d)(1)(A).

The ALJ evaluated plaintiff's allegation of disability pursuant
to the relevant five-step sequential process. Bowen v. Yuckert, 482
U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step one, the ALJ
found that plaintiff had not engaged in substantial gainful activity
since the alleged onset date, November 22, 2008, through her date last
insured of December 31, 2012. Tr. 19; 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the ALJ found that plaintiff had severe physical
impairments of obesity and inflammatory arthritis, but that
plaintiff's mental impairments of anxiety, panic disorder, and
depression were nonsevere. Tr. 19-21; 20 C.F.R. § 404.1520(a)(4)(ii).
In making that finding, the ALJ considered the four broad functional
areas enumerated in the disability regulations for evaluating mental
disorders (known as "paragraph B" criteria). Tr. 21; 20 C.F.R. § 404,
Subpt. P, App. 1, 12.00 (C).

At step three, the ALJ found that plaintiff's medically severe
impairments did not meet or equal one of a number of listed
impairments that the Commissioner acknowledges are so severe as to
preclude gainful activity. Tr. 21; 20 C.F.R. § 404.1520(d). Because
plaintiff was not presumptively disabled at step three, the ALJ
continued to evaluate how plaintiff's impairments affected her ability
to work by assessing her residual functional capacity (RFC). Tr. 22;
20 C.F.R. § 404.1520(e).

At step four, the ALJ found that plaintiff had the RFC to
"perform sedentary work as defined in 20 CFR 404.1567(a), except she

4 – FINDINGS AND RECOMMENDATION

must avoid exposure to hazards and heights." Tr. 22. Based on plaintiff's assessed RFC and the testimony of the VE, the ALJ found that plaintiff could perform her past relevant work as a proof machine operator. Tr. 26; 20 C.F.R. § 404.1520(e). Because the ALJ determined that plaintiff could perform her past relevant work, the inquiry did not proceed to step five, and the ALJ found plaintiff not disabled under the meaning of the Act. Tr. 27; 20 C.F.R. § 404.1520(a)(4)(iv).

## DISCUSSION

Plaintiff asserts that the Commissioner's decision should be reversed and she be found disabled as of November 22, 2008, or in the alternative, the case be remanded for a fair and thorough evaluation of the following issues. Pl.'s Br. 4, 16. Plaintiff argues the ALJ erred by: (1) improperly finding her testimony not credible; (2) failing to properly consider her poor eyesight in the RFC assessment; (3) improperly disregarding the opinion of Dr. Thomas Harburg, her primary care physician; and (4) failing to provide reasons supporting his rationale for the "paragraph B" criteria.

A.    Credibility Determination

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discrediting plaintiff's testimony. Pl.'s Br. 11-16.

Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's subjective testimony must be clear and convincing. Burch, 400 F.3d at 680 (9th Cir. 2005). The ALJ must identify what testimony

is not credible and what evidence undermines the claimant's complaints. Id.; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies either in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity and effect of the alleged symptoms complained. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F. 3d 1028, 1040 (9th Cir. 2007); Light v. Social Sec. Admin., 119 F.3d 789,792 (9th Cir. 1997).

The ALJ found plaintiff's complaints concerning the intensity, persistence, and limiting effects of her pain and anxiety attacks were not fully credible because: (1) plaintiff's complaints increased in severity after she applied for disability benefits and was denied; and (2) plaintiff had made inconsistent statements regarding her ability to drive and care for herself, the frequency of her panic attacks, and her reasons for leaving work and ability to look for work. Tr. 23-24.

First, the ALJ found that plaintiff's complaints of limitations increased in severity after she applied for disability benefits and was denied. Tr. 23. Specifically, the ALJ noted that in September 2011, after being denied disability benefits, plaintiff asked her primary care physician, Dr. Thomas Harburg, to place a note in her chart stating she was disabled, which Dr. Harburg declined to do. Tr. 23, 295-96. Shortly thereafter, in October 2011, plaintiff reported

to Dr. Harburg that many things "had changed," including that she had pain in her arms and legs, which affected her ability to do things around the house, but plaintiff admitted that she was visiting Dr. Harburg primarily to document her symptoms. Tr. 23, 297.

In determining credibility, "an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony." Burch, 400 F.3d at 680 (9th Cir. 2005). The ALJ found that plaintiff's statements suggested that she was seeking treatment primarily to generate evidence for her application and appeal, rather than an attempt to obtain relief from her alleged symptoms. Tr. 23, 297. Here, the ALJ properly cited inconsistencies in the evidence to support his reasons for discrediting plaintiff's statements.

Second, the ALJ found plaintiff had made inconsistent statements regarding numerous matters relevant to her disability. Specifically, the ALJ noted that plaintiff testified in 2013 that she had not driven for three to four years; contradicting plaintiff and her mother's reports that she drove once a month, plaintiff's March 2011 report to Dr. Ellison that she could "drive a car without difficulty," and Dr. Harburg's medical notes indicating that plaintiff reported that she was still driving, but with difficulty. Tr. 24, 36, 176, 192, 267, 297.

The ALJ also found plaintiff's testimony not credible with respect to plaintiff's dependence on her mother for care and support. Tr. 23. The ALJ found it hard to believe that plaintiff's 83-year old mother, who had had multiple strokes and who was overweight herself,

7 - FINDINGS AND RECOMMENDATION

would be able to help care for plaintiff to the degree alleged.  Tr. 23.  The ALJ also noted that plaintiff reported that she was independent with respect to her personal care needs, yet also reported to Dr. McCabe that she depended on her mother to dress and bathe her, with no medical evidence of an objective change in her condition to warrant this care.  Tr. 24, 189-197.

An ALJ can discredit a plaintiff's testimony if it is found to be "unbelievable in general, not because the extent and severity of the appellant's pain or fatigue was unsupported by medical evidence." Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).  Here, the ALJ found plaintiff's claims quite "extreme," and given the evidence of record, his decision to discredit plaintiff's testimony is reasonable. Tr. 23.

With regards to her panic attacks, the ALJ noted that plaintiff had not reported any unusual fears or behaviors as the cause for the alleged attacks and also noted inconsistencies in the frequency of the reported attacks.  Tr. 24.  Specifically, the ALJ noted that in April 2011, plaintiff reported having two to three panic attacks daily, and in May 2011, to having at least one panic attack per day.  Tr. 24, 200, 283.  However, the ALJ noted that at the 2013 hearing, plaintiff testified to having panic attacks six to eight times a month for the past two years, and only having about five a month in 2008.  Tr. 54.

Finally, with respect to plaintiff's reasons for leaving work, the ALJ cited inconsistencies between plaintiff's testimony that she left her job due to impairments, and her earlier reports that she was laid off.  Tr. 24, 41, 225, 243-44.  The ALJ also noted that plaintiff

reported looking for other jobs, but stated no one was hiring and that she had never been trained on a computer. Tr. 46. The ALJ found that this suggested that plaintiff was still able and willing to work at the time she left her full time job, and that it was not a disabling impairment that led her to stop working. Tr. 24, 46.

Here, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's testimony. While variable interpretations of this evidence may exist, the ALJ's analysis was nonetheless reasonable, such that it must be upheld. Batson, 359 F.3d at 1198 (9th Cir. 2004). Thus, I find that the ALJ did not arbitrarily discredit plaintiff's testimony.

B.    Vision Impairments

Plaintiff argues that the ALJ erred by failing to consider functional limitations resulting from her poor eyesight in the RFC assessment. Pl.'s Br. 4-7. The ALJ did not find plaintiff's vision to be a severe impairment at step two and did not address any vision impairments in the RFC.

At step two, the ALJ determines if the claimant has a "severe" impairment that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A severe impairment cannot be established on the basis of symptoms alone; it must be supported by a medical diagnosis. Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005); 20 C.F.R. § 404.1508. "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v.

9 - FINDINGS AND RECOMMENDATION

Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks and citations omitted). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims,' and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Smolen, 80 F.3d at 1290 and S.S.R. 85-28).

On March 5, 2011, Dr. John Ellison, performed a comprehensive musculoskeletal examination of plaintiff. Tr. 267. He conducted a Snellen's test which revealed plaintiff had 20/70 vision in both eyes and that plaintiff was very myopic. Tr. 268. However, Dr. Ellison did not diagnose a visual impairment and instead indicated that plaintiff needed a new glasses prescription for her eyes. Tr. 268. Thus, the ALJ did not err by failing to find plaintiff's vision to be a severe impairment, as it was not clearly established by medical evidence.

Likewise, the ALJ did not err in failing to consider plaintiff's poor eyesight in the RFC assessment. The RFC has three components: physical abilities, mental abilities, and other impairments, including pain, fatigue, and vision. 20 C.F.R. § 404.1545(a), (d). To move beyond step two, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 404.1508. A plaintiff's statements about pain or other symptoms will not alone establish disability; there must be clinical signs such as laboratory findings or diagnoses that show the claimant has a medical impairments which could reasonably be expected to produce the

pain or other symptoms alleged and which, when considered with all of the other evidence, including statements about the intensity and persistence of the pain or other symptoms, would lead to a conclusion of disability. 20 C.F.R. § 404.1529.

Plaintiff alleged problems with her vision in her December 20, 2010 Function Report form; later, in her May 18, 2011 Disability Report-Appeal form, she stated that her eyesight had become so bad she could hardly see what was on a television. Tr. 194, 200. On October 12, 2011, plaintiff called her physician and mentioned not having any vision in her left eye, and at the 2013 hearing she testified that she could not see the computer screen very well at work. Tr. 40, 291. However, multiple doctors examined plaintiff — including Dr. Ellison, who determined that plaintiff needed a new prescription for her eyes— and none diagnosed her with a visual impairment. Tr. 226, 250, 268, 286.

Also, even if the ALJ failed to address plaintiff's poor eyesight, it is harmless error. An ALJ's error is considered harmless if it is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the lack of objective medical findings pertaining to plaintiff's visual limitations, paired with the ALJ properly discrediting plaintiff's testimony above, is sufficient to affirm the step two findings and the ALJ not assessing the plaintiff's poor eyesight in the RFC assessment.

In sum, the ALJ did not err in conducting the RFC assessment. As discussed above, plaintiff failed to show that her vision was an impairment at step two to require it to be considered in the RFC assessment. Further, because evidence of plaintiff's visual impairments rests upon her subjective statements alone, and the ALJ provided clear and convincing reasons for discrediting plaintiff's testimony, the ALJ did not err in not considering plaintiff's poor eyesight in the RFC assessment.

C.    Opinion of Treating Physician, Dr. Harburg

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Dr. Thomas Harburg, plaintiff's treating physician. Pl.'s Br. 9-11.

The medical opinion of a plaintiff's treating physician is entitled to "special weight" because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Rodriguez v. Bowen, 876 F.2d 759, 761 (9th Cir. 1989). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202, (9th Cir. 2001) (citing Reddick, 157 F.3d at 725 (9th Cir. 1998)). If contradicted, the ALJ may reject the opinion with specific and legitimate reasons supported by substantial evidence in the record. Holohan, 246 F.3d at 1202; Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ gave little weight to Dr. Harburg's opinion noting that Dr. Harburg's reports were based "quite heavily on the subjective

12 – FINDINGS AND RECOMMENDATION

report of symptoms and limitations provided by the [plaintiff]." Tr. 25-26. The ALJ further found that there existed the possibility that a doctor may express opinions to assist a patient with whom he sympathized, or that patients might be demanding in seeking supportive notes. Tr. 26.

Specifically, the ALJ referenced such a sharp change in Dr. Harburg's opinion by noting that in September 2011, Dr. Harburg diagnosed plaintiff as not disabled; two months later Dr. Harburg completed a questionnaire on behalf of the claimant's representative and reported that plaintiff had "severe panic, chronic pain, depression, obesity, history of myocardial infarction, history of diarrhea, history of fevers and self-reported blind left eye." Tr. 25, 278-80, 294-96. Dr. Harburg also reported that he was not qualified to assess the plaintiff's physical functional capacity, yet made findings that plaintiff would "miss more than two days a month from even a sedentary job due to an inability to get out of her house," and that plaintiff's symptoms would likely increase if she worked due to plaintiff's stress and panic attacks. Tr. 25-26, 279-80.

I find no error in the ALJ's evaluation of Dr. Harburg's opinion. The ALJ found that Dr. Harburg's reports were based quite heavily on plaintiff's subjective report of her symptoms and limitations, shown through the sharp contrast in Dr. Harburg's opinions. Tr. 25, 278-80, 294-96. The ALJ further noted that "there exist good reasons for questioning the reliability of the [plaintiff's] subjective complaints," given his prior credibility evaluation of plaintiff. Tr.

13 – FINDINGS AND RECOMMENDATION

26.    Further, a "physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" Morgan v. Comm'r of Soc. Sec. Admin., 169 F. 3d 595, 602 (9th Cir. 1999) (quoting Fair v. Bowen, 885 F.2d 597, 605, (9th Cir. 1989); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). Applying either the clear and convincing, or the specific and legitimate reason standards, the ALJ provided evidence in the record to support his findings.

D.    "Paragraph B" Criteria

Finally, plaintiff argues that the ALJ erred by not providing detailed rationale for findings regarding the degree of limitation in the functional areas presented in 20 C.F.R. § 404.1520a(c), known as "paragraph B" criteria. Pl.'s Br. 7-9. Essentially plaintiff argues that: (1) the ALJ erred in his step two analysis by failing to provide detailed rationale for his findings regarding the medical severity of plaintiff's impairments; and (2) the ALJ erred by failing to provide detailed rationale for his findings for why her medication history did not support a finding of moderate limitation in her concentration, persistence, and pace during the RFC analysis.

As discussed above, at step two, the ALJ determines if the claimant has a "severe" impairment that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). An "ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by

medical evidence.'" <u>Webb</u>, 433 F.3d at 687 (9th Cir. 2005) (quoting
<u>Smolen</u>, 80 F.3d at 1290 and S.S.R. 85-28).

    Here, plaintiff testified that she had numerous panic attacks
each month for a number of years and that she had taken medications
for her mental health. Tr. 53-54. However, the ALJ found that the
medical record did not reflect the level of disability alleged by
plaintiff. Tr. 20, 286. Specifically, the ALJ relied on Dr. McCabe's
report that diagnosed plaintiff as "meeting the criteria for a panic
disorder," but finding that this panic disorder, combined with her
depression, could be treated and did not affect plaintiff's ability to
work. Tr. 20, 286. Regardless, the ALJ considered the effects of
plaintiff's panic attacks later when determining her RFC, by noting
their existence, but discrediting their severity based on his findings
that plaintiff's testimony was not credible. Tr. 22-24. As discussed
above, the ALJ noted the inconsistencies in plaintiff's panic attacks
ranging from reports of two to three times per day to either five or
eight times per month. Tr. 24. <u>Lewis v. Astrue</u>, 498 F.3d 909, 911
(9th Cir. 2007) (any error at step two is considered harmless if the
ALJ considered the effects of impairments deemed non-severe in
assessing a claimant's RFC); 20 C.F.R. § 404.1545(a)(2) ("We will
consider all of your medically determinable impairments of which we
are aware, including your medically determinable impairments that are
not 'severe' . . . when we assess your residual functional
capacity.").

    Plaintiff next argues that the ALJ erred by failing to provide
detailed rationale to explain why plaintiff's medication history did

15 - FINDINGS AND RECOMMENDATION

not support a finding of moderate limitation in her concentration, persistence, and pace during the RFC analysis. Plaintiff maintains that the ALJ improperly found that she had only mild limitations in concentration, persistence, and pace, even though her ongoing medication therapy supported at least a finding of a moderate limitation in her concentration, persistence, and pace. Pl.'s Br. 7-8.

Plaintiff testified that she was taking pain medications and medications for her mental health. Tr. 51-53. Plaintiff further testified that she was immune to the medication, and that she was not taking the higher dosage recommended by Dr. Harburg because it kept her mind from "operating correctly." Tr. 52. Because the side effects of medication can affect an individual's ability to work, the Commissioner considers them in disability determinations. Romero v. Comm'r Soc. Sec. Admin., 2014 WL 4824587 (D. Or. Sept. 25, 2014) (citing Salazar v. Astrue 859 F. Supp. 2d 1202, 1228 (D. Or. Mar. 12, 2012)).

Here, the ALJ considered plaintiff's medications and her statements about the medications' effects when performing the RFC assessment. Tr. 22. However, as discussed above, the ALJ found plaintiff's statements were not fully credible and therefore discredited plaintiff's statements about the intensity, persistence and limiting effects of the symptoms, including her medication usage. Tr. 23.

The ALJ properly provided detailed rationale for his findings on the medical severity of plaintiff's impairments and his reasons for

discounting plaintiff's testimony concerning her medication use. For these reasons, I find no error with the ALJ's RFC assessment with respect to the "paragraph B" criteria analysis.

## CONCLUSION

The ALJ's finding that plaintiff was not disabled under the Act is supported by substantial evidence in the record. Accordingly, the Commissioner's decision should be AFFIRMED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

Dated this 30ᵗ day of September 2015.

_____
THOMAS M. COFFIN
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION